IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

**KENNETH DIXON**                                                            **PLAINTIFF**

**VS.**                                            **CIVIL ACTION NO: 3:09-CV-251 -LRA**

**MDOC OFFICIALS, ET AL**                                    **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

THIS CAUSE is before the Court on the Motion for Summary Judgment filed by Defendant Felicia Morris, R.N., and the Motion for Summary Judgment filed by Defendants Brian Ladner, Sean Smith, Patricia Johnson, Alice Arnold and David Petrie.[1] The Court has considered all the pleadings, Dixon's sworn testimony given at the omnibus hearing,[2] his medical records, and the applicable law. This review compels the Court to find that the Motion for Summary Judgment filed by Felicia Morris, R.N., is meritorious and should be granted. The Motion for Summary Judgment filed by the remaining Defendants is meritorious as to Defendants Patricia Johnson and David Petrie. As to Defendants Alice Arnold, Sean Smith, and Brian Ladner, the Court finds that there are genuine issues of material fact remaining, and the Motion shall be denied.

## FACTS

Jurisdiction of this case is based upon 42 U.S.C. § 1983. Dixon's sworn testimony at the omnibus hearing, in conjunction with the written evidence submitted by Defendants,[3] reveal the following relevant facts.[4] Dixon has been incarcerated in the

---

[1] ECF Nos. 49 & 59, filed March 22, 2010, and April 23, 2010.

[2] ECF No. 59-2, Transcript of omnibus hearing conducted 8/10/2009.

[3] Dixon's medical records, Exhibit A to Defendant Morris's Motion for Summary Judgment, are sealed and located at ECF No. 52. A transcript of the omnibus hearing is Exhibit A to the remaining Defendants' Motion for Summary Judgment, ECF No. 59-2.

[4] ECF No. 28, p. 7-8 (Testimony of Plaintiff).

custody of the Mississippi Department of Corrections ["MDOC"] at the East Mississippi Correctional Facility ["EMCF"] in Meridian, Mississippi, since he was transferred there from Central Mississippi Correctional Facility ["CMCF"] in Pearl, Mississippi, on March 6, 2009.

On September 18, 2008, while housed at CMCF, he was assaulted by another inmate, Jamie Evans. Evans knocked him into two metal tables in the cafeteria. According to Dixon, he suffered from severe neck, back and shoulder pain after the incident. He was taken to the clinic that afternoon and examined by a nurse. The nurse told him that there was nothing he could do about his pain except for giving him Tylenol; he could put in a sick call request. Dixon filed the sick call request, and he was called in to see Dr. Nikesha Webb after five days.[5]

Dr. Webb examined him and ordered an x-ray for his shoulder. According to Plaintiff, Dr. Webb was negligent and did not really try to help him. She ignored his back and neck pain and prescribed only Tylenol. She did order x-rays.[6]

After he was placed in protective custody on October 1, 2008, Dixon contends he was not allowed to see a doctor. On October 16, he blacked out behind the door. He was taken to the hospital, unable to walk and in severe pain. Although he had put in sick calls from September 20th until October 26th, he was "behind doors," or in lockdown, and could not see the doctor. He wrote numerous sick call requests during this period.[7]

Plaintiff was moved to EMCF on March 6, 2009. He has seen the doctor since he was transferred but he still has not had the appropriate x-rays. According to Plaintiff, he needs to be sent to a specialist to treat the severe pain he still has in his neck. Plaintiff

---

[5]ECF No. 59-2, pp. 6-7.

[6]ECF No. 59-2, p. 7.

[7]ECF No. 59-2, pp. 7-9.

had back problems [two herniated discs] before this event, and before he went to CMCF. Plaintiff contends that his medical care has been constitutionally inadequate.

According to Plaintiff, Defendant Brian Ladner was the associate warden at CMCF. Plaintiff had had trouble with Evans and other gang members before the assault, and he wrote Defendant Ladner and told him. Yet, Defendant Ladner ignored him. Ladner then put him in administrative protective custody on October 1, 2008, after Plaintiff was assaulted. Plaintiff claims he has written over 100 sick call requests, but Defendant Ladner has not helped him.[8]

Defendant Nurse Morris was deliberately rude to Plaintiff and did not try to secure more medical care for Plaintiff's injuries. She threw away his sick call requests.

Plaintiff wrote an RVR to Defendant Sean Smith, CID, and told him that Evans was trying to have him killed. Defendant Smith did not investigate the threats.[9]

Defendant Lieutenant Patricia Johnson was the shift commander on September 18, 2008. She failed to monitor Evans, so Evans was in an unauthorized area. She could have prevented the assault.[10]

Defendant Lieutenant Alice Arnold was monitoring medications and helping the gang members. She is affiliated with Evans and the gang members and could have prevented the attack, as she was standing on the sidewalk when it happened.[11]

Defendant David Petrie is the claim adjudicator for ARP. Although Plaintiff filed an ARP on October 3, 2008, though the CMCF law library, Defendant Petrie never

---

[8] ECF No. 59-2, pp. 15, 12, 17 (original transcript pp. 16-17).

[9] ECF No. 59-2, pp. 18-19.

[10] ECF No. 59-2, p. 19.

[11] ECF No. 59-2, p. 19-21.

entertained it or answered the ARP. Plaintiff gave the ARP to Lakesha Washington at the CMCF law library to be filed in the proper place.[12]

Plaintiff concludes that he still is in extreme pain as a result of the assault by Evans. He contends that the assault should not have happened, as he had warned Defendants about the threats by Evans and other gang members. Plaintiff concludes that these Defendants have failed to protect him and to provide him with constitutionally adequate medical care.

## SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The substantive law establishes those elements on which a plaintiff bears the burden of proof at trial; only facts relevant to those elements of proof are considered for summary judgment purposes. *Id*. at 322. There is a genuine factual dispute between the parties only "when a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 248 (1986).

---

[12] ECF No. 59-2, pp. 21-22.

## LEGAL ANALYSIS

### I.   Medical Care

Dixon complains that the medical care he received after he was attacked by inmate Evans has been constitutionally inadequate. He charges that Defendant Morris threw away his sick call requests and prevented him from seeing a doctor.[13]

In response to these allegations, Defendant Morris has submitted copies of medical records of Dixon[14] and her sworn Affidavit, dated March 22, 2010, outlining her treatment of Dixon.[15] Dixon was housed at CMCF from November 2007 to March 2009. His medical records confirm that he was treated by various medical providers on numerous occasions. Defendant Morris did not become directly involved in any aspect of his care and treatment until December 2008. She categorically denies ever discarding any sick call request form completed by Dixon, either one she handled personally or any other sick call request form.[16] Her affidavit explains the sick call request system utilized at CMCF.

Defendant Morris's affidavit tracks the medical care provided to Dixon beginning on September 13, 2008, and continuing until March 5, 2009. The records confirm that Dixon was treated for back pain by several medical care professionals other than Defendant Morris, including Natalie Campbell, R.N.; Nikesha Webb, M.D.; Floyd Brown, R.N.; Samantha Gonzales, R.N.; Gary Hamil, F.N.P.; and, Vera Regina Brooks, M.D.[17] After his altercation on September 18, 2009, Dixon was evaluated the next day by

---

[13] ECF No. 59-2, pp. 9-10.

[14] ECF No. 52, pp. 1-56, sealed medical records of Kenneth Dixon.

[15] ECF No. 49-3.

[16] ECF No. 49-3, p. 2.

[17] ECF No. 49-3, pp. 2-7 (with references to medical records).

Natalie Campbell, R.N.[18] She referred him for a physician exam. On September 23, 2008, Dixon was evaluated by Nikesha Webb, M.D. Dr. Webb noted left shoulder pain, ordered x-rays, and directed him to the clinic in two weeks for a follow-up.[19] The x-rays revealed no fracture, no obvious dislocation, and no bony abnormalities.[20]

Dixon received medical treatment by health care professionals again on October 1, 2008 (by Floyd Brown, R.N.); October 16, 2008 (by Samantha Gonzales, R.N. and Dr. Webb); December 14, 2008 (triaged by medical department on December 17, 2008); December 24, 2008 (by Defendant Morris and by Gary Hamil, F.N.P.); February 11, 2009 (triaged by medical department on February 13, 2009); February 17, 2009 (by Defendant Morris); February 18, 2009 (by Vera Regina Brooks, M.D.); and, February 17, 2009 (by Defendant Morris).[21]

Dixon's diagnosis by most of these providers was chronic lumbago and left shoulder pain. A lumbar spine film also indicated the presence of moderate degenerative disc changes at L5/S1.[22] He was prescribed Naproxen, Flexeril, and Baclofen, as well as Predisone and physical therapy.[23]

The medical records, coupled with Defendant Morris's affidavit, rebut Dixon's complaints that Defendant Morris refused to treat him or threw away his sick call requests. There are numerous sick call requests in his medical file; Dixon's unsubstantiated and conclusory claims that she threw them away does not create a

---

[18]ECF No. 52, pp. 35-37.

[19]ECF No. 52, p. 38.

[20]ECF No. 52, p. 40.

[21]ECF No. 49-3, pp. 3-7 (with references to specific medical records in ECF 52).

[22]ECF No. 49-3, p. 6.

[23]ECF No. 49-3, pp. 5-7.

genuine issue of fact. Dixon offered no credible, competent evidence to support this claim; his accusation is based upon speculation.[24] To defeat a summary judgment motion, he must rely on specific evidence in the record and articulate the precise manner in which that evidence supports his claims. *Stults v. Conoco, Inc.,* 7 F.3d 651, 656 (5th Cir. 1996). He cannot rely on unsubstantiated, conclusory assertions or merely present a scintilla of evidence. *Fiesel v. Cherry,* 294 F.3d 664, 667 (5th Cir. 2002), *citing Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).

Based upon this unrebutted evidence, no constitutional claim has been stated. Deliberate indifference to a prisoner's serious medical needs is an actionable Eighth Amendment violation under §1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976). The standard for finding "deliberate indifference is a subjective inquiry." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The conduct must result in "unnecessary and wanton infliction of pain." *Wilson v. Seiter*, 501 U.S. 294, 297 (1997). Dixon must show that Defendant Morris was actually aware of a risk of harm to him, yet consciously disregarded or ignored it. *Id.* The medical records confirm that Dixon was treated in a timely fashion and has never been at risk for serious harm due to the prison's failure to provide him with medical treatment.

In *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006), the Court of Appeals for the Fifth Circuit summarized the case law regarding the standard of "deliberate indifference" to the medical concerns of prisoners in part as follows:

> ... A prison official acts with deliberate indifference "only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it." Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's

---

[24]Proof that nurse Morris did throw away some sick call requests would still not make Dixon's claims viable under §1983 as long as Dixon was given appropriate medical care.

7

> disagreement with his medical treatment, absent exceptional circumstances. "Furthermore, the decision whether to provide additional treatment 'is a classic example of a matter for medical judgment.'" A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" "Deliberate indifference 'is an extremely high standard to meet.'"

*Id.* at 346 (citations and footnotes omitted).

The medical evidence submitted by the parties confirms that Dixon was provided conservative, non-surgical treatment for his shoulder and back condition between the time he was assaulted by Evans until he left CMCF. This regular treatment prevents any finding that Dixon was being mistreated or neglected by Defendant Morris or that she acted with subjective deliberate indifference to his serious medical needs. As quoted above from *Gobert*, "deliberate indifference" is an extremely high standard to meet, and a prisoner's disagreement with his medical care does not ordinarily meet that standard. In this case, Dixon wanted to see a specialist and was not pleased with the care he received at CMCF.[25] He thinks his medical requests were ignored or thrown away, but he has no evidence to show that this actually occurred. Numerous requests are contained in his medical records.[26] Under the circumstances in Dixon's case, the high standard of deliberate indifference cannot be met.

Dixon has failed to rebut the evidence presented by Defendant Morris regarding his medical care, and Defendant Morris is entitled to a judgment at law.

---

[25] ECF 59-2, pp. 12-13.

[26] Plaintiff explained that because he worked at the barbershop at CMCF, he could walk to the clinic anytime he wanted to go. He estimated that he put in around 100 requests [presumably by hand-delivering some of them] and was only seen about five times. ECF 59-2, pp. 14-15. At another time, Plaintiff testified that 24 sick calls were thrown away. ECF 59-2, p. 9.

For the same reasons, any claims regarding Dixon's medical care against the remaining Defendants shall also be dismissed on the merits. Dixon also named Dr. Webb as a defendant, but she has never been served with process because she no longer works at MDOC and her address is unknown. Plaintiff summarized his claims against Dr. Webb as "negligence;"[27] For the same reasons, the Court finds that no constitutional cause of action has been stated against Dr. Webb, and no further attempts to obtain process on her will be allowed.

## II.     Failure to Protect

Prison officials have a duty to protect prisoners from violence by other inmates. *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). To establish a failure-to-protect claim under section 1983, Plaintiff must show that he is/was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998); *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995). Further, to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." *Newton*, 133 F.3d at 308 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

### A.     Defendants Johnson and Petrie

Dixon contends that Defendant Patricia Johnson was the shift commander on the day Evans assaulted him. Had she properly monitored the inmates that day, she could have prevented the assault; she is supposed to know all the inmates' whereabouts.[28] The Court finds that Dixon's claim against Johnson is one of negligence, and negligence cannot form the basis of a § 1983 claim. *Daniel v. Williams*, 474 U.S. 327 (1986)

---

[27] ECF No. 59-2, p. 26.

[28] ECF No. 59-2, p. 19.

(negligent acts of official do not amount to deprivation of due process).  Defendant Johnson is entitled to summary judgment.

Plaintiff's claims against Defendant David Petrie involve only the investigation following the assault and the processing of Dixon's grievance thereafter.  Like that claim against Defendant Johnson, these amount to no more than accusations of negligence.  A prisoner does not have a protected liberty interest in the process of his prison grievances. *Gieger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005).  Negligence in "investigations" does not rise to the level of a constitutional violation.

The Court in *Farmer* clearly stated that "[n]ot every injury by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety." 511 U.S. at 834.  The Motion for Summary Judgment [ECF No. 59] shall be granted as to Defendants Johnson and Petrie.

### B.     Defendants Ladner, Arnold and Smith

Plaintiff contends that he was assaulted by an organization member, Jamie Evans, in the cafeteria at CMCF on September 18, 2008.  He was knocked into two metal tables and was taken to the clinic.  He testified that Defendant Arnold was gang-affiliated and knew Evans was about to attack Plaintiff, having hidden him; she allowed the attack to happen.

Dixon charges that Defendants Arnold, Ladner and Smith knew that Plaintiff was in danger and failed to protect him from Evans.  According to Plaintiff, he had told Defendant Ladner and Defendant Sean Smith *before the attack* that Evans and other gang members had threatened him and that he feared for his life.

Dixon testified that Defendant Ladner checked into the barbershop with Dixon regularly, and Dixon "might have told him about two-- maybe about two to three weeks before" about a potential threat to his safety by an alleged gang member.[29]  Dixon

---

[29]ECF No. 59-2, pp. 17-18.

testified that in August 2008, he had had a confrontation with Evans. Evans and about five more organization members came to his cell and tried to assault him.[30] He told Defendant Ladner about this confrontation. After the assault by Evans, Defendant Ladner immediately had Dixon moved into protective custody, rather than moving Evans. Dixon contends that Ladner "disregarded [his] safety" and should have moved Evans instead of Dixon. He should have moved Evans after the August confrontation, rather than waiting until he was assaulted.

Dixon's testimony as to precisely what he told Ladner prior to the attack is vague and imprecise. It is unclear whether he reported a specific threat, or make a written report, or sought to be placed in protective custody. He generally feared the gang members. Plaintiff contends that Defendant Ladner should have moved Evans after the first threats, rather than putting Dixon in protective custody *after* the cafeteria attack occurred. Plaintiff contends that Defendant Ladner did know of a risk prior to the September attack; the issue is whether he responded reasonably to the risk. *Farmer*, 511 U.S. at 843 (no liability when response to risk was reasonable). None of this testimony by Plaintiff has been rebutted except by assertions in the motion. The Court finds that these are factual issues that must be resolved.

Dixon accuses Defendant Alice Arnold of being affiliated with gang members and of having hidden Evans in the medication area the day of the attack. He admitted that he currently has no proof of such allegations and that he had not told her about any perceived threat to his safety.[31] Yet, Plaintiff contends that he could get witnesses to attest to Defendant Arnold's gang affiliations.

---

[30]ECF No. 59-2, p. 12.

[31]ECF No. 59-2, p. 20.

Dixon testified that he wrote Defendant Sean Smith and talked to him verbally concerning "that this inmate [was] trying to have [him] hurt or killed."[32] Plaintiff claims that another gang member had sent letters threatening him.

The Court finds that there are genuine issues of material fact as to Defendants Ladner, Arnold, and Smith. Plaintiff contends that he told Ladner and Smith that he feared for his life *prior to* the September attack, and they failed to protect him. These asserted facts have not been rebutted by Defendants by competent evidence. Whether this is true, and whether their actions were reasonable, are material issues which have not been resolved.

Plaintiff accuses Defendant Arnold of actual complicity in the attack on him. This assertion has not been rebutted by competent evidence, although Plaintiff has conceded that he currently has no proof of gang affiliation on the part of Defendant Arnold.

The Court finds that there are material facts to be resolved: whether these Defendants were aware of a "substantial risk" of harm to Plaintiff prior to the attack by Evans, and whether they acted reasonably to prevent further harm. *See Johnson v. Sanders*, 358 Fed. Appx. 588, 2010 WL 10914 (5th Cir. Jan. 4, 2010) (reversing district court's 28 U.S.C. § 1915 dismissal of failure to protect claim).

## **CONCLUSION**

The Court finds that there are no genuine issues as to any material fact in this case regarding Plaintiff's medical care. Accordingly, Defendant Morris is entitled to a judgment at law, and her Motion for Summary Judgment [ECF No. 49] shall be granted. Plaintiff has failed to state a claim upon which relief may be granted as to Dr. Nikesha Webb, a named defendant who has not been served, and the Complaint is also dismissed against her with prejudice.

---

[32]ECF No. 59-2, p. 12.

On his failure to protect claims, there are no issues of material fact remaining regarding the claims against Defendants Johnson and Petrie, and the Motion for Summary Judgment [ECF No. 59] shall be granted as to them.  Defendants Johnson and Petrie are entitled to a judgment as a matter of law under Rule 56(c) of the Federal Rules of Civil Procedure.

The Motion for Summary Judgment [ECF No. 59] shall be denied as to Defendants Ladner, Smith, and Arnold.  An evidentiary hearing shall be scheduled to consider Plaintiff's claims against these Defendants.

IT IS FURTHER ORDERED that Defendants Morris, Johnson, Petrie, and Webb are dismissed with prejudice.

SO ORDERED, this the 23rd day of November, 2010.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE