**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

KENNETH DIXON                                                                                    PLAINTIFF

VS.                                                                CIVIL ACTION NO. 3:09cv251-LRA

BRIAN LADNER, SEAN
SMITH, AND ALICE ARNOLD                                                              DEFENDANTS

**OPINION AND ORDER**

This cause came before the undersigned United States Magistrate Judge on July 18, 2011, for a trial regarding the Complaint filed by Plaintiff, Kenneth Dixon. Dixon presented his case *pro se,* whereas Defendants were represented by attorneys Charles B. Irvin and Tommy D. Goodwin, Mississippi Attorney General's Office.

Jurisdiction of this case is based upon 42 U.S.C. § 1983. Dixon is a convicted felon who was housed in the custody of the Mississippi Department of Corrections ["MDOC"] at the Central Mississippi Correctional Facility ["CMCF"] in Pearl, Mississippi, in August and September, 2008.

The only issue now before the Court is whether Defendants Brian Ladner, Sean Smith, and Alice Arnold violated Dixon's constitutional rights by failing to protect him from an assault by inmate Jamie Evans.[1]

Prison officials have a duty under the Eighth Amendment to protect prisoners from violence by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). To establish a failure-to-protect claim under section 1983, Plaintiff must show that he is/was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to

---

[1] Dixon also claimed that his medical care for the injuries he sustained was constitutionally inadequate. Those medical claims were previously dismissed by the Court by Memorandum Opinion and Order filed November 23, 2010, ECF No. 70. No testimony regarding his medical care was presented.

his need for protection.  *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998);  *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995).  Further, to act with deliberate indifference, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference."  *Newton*, 133 F.3d at 308 (quoting *Farmer*, 511 U.S. at 837).  Whether a prison official had the requisite knowledge of a substantial risk is a question of fact.  *Neals*, 59 F.3d at 533.  Deliberate indifference is "a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Board of Cnty. Comm'rs of Bryan Cnty v. Brown*, 530 U.S. 397, 410 (1997).

It is Plaintiff's burden to prove these elements by a preponderance of the evidence.  It is the duty of the Court to weigh the evidence presented and to determine whether or not the Plaintiff has proven his claims by establishing that these Defendants violated his constitutional rights.

The Court concludes that the Plaintiff has failed to meet his burden of proof.  Dixon testified that he was first confronted by inmate Evans on August 22, 2008.  After that incident, he was given a rules violation report and transferred away from Evans within six hours to Building C-2.  According to Dixon, he "brought the problem" several times to Defendant Ladner, the associate warden at CMCF, that Evans, a gang member, was trying to have him killed.  Plaintiff testified that he also told Defendant Sean Smith, criminal investigation division, that gang members were trying to have him killed.  Yet Smith failed to investigate his complaints and instead asked Dixon if he were a gang member himself.  Other than moving him to a different building from Evans, nothing was done.

Plaintiff testified that on September 22, 2008, he was assaulted by inmate Evans.  Evans entered the C-2 dining hall, where he should not have been, and knocked him into two metal tables.  Plaintiff testified that Defendant Lieutenant Alice Arnold was

monitoring medications that day, as well as the sidewalk.  She failed to monitor Evans, and Dixon believes she even hid him in the medication room.  Plaintiff testified that Defendant Arnold "socializes" with gang members all the time.  Plaintiff saw her talking to somebody that day, and he believes it was Evans.

Plaintiff testified that he was placed in protective custody [hereafter "PC"] on October 1, 2008, where he remained for about three months.  He then requested to be sent to the general population.

According to Dixon, he wrote Defendant Smith a "hand letter" prior to the attack, telling him of his fears.  He also told Defendant Ladner when Ladner came in the barbershop where Dixon worked.

Inmates Kenneth Griffin, Charlie Taylor, and James Oakes were all transported from various correctional facilities to the Court to give testimony at the request of Plaintiff.  These witnesses confirmed the assault.  However, none of the witnesses testified that Defendants Ladner and Smith were aware of Plaintiff's fears of being harmed prior to the assault, or had any prior knowledge of Evans's intent to attack Dixon.  They also did not corroborate Dixon's charge that Defendant Arnold was affiliated with the gang or Evans, or that she failed to prevent the attack by Evans.

Defendants also testified regarding Plaintiff's allegations.  Defendants Ladner and Smith denied having any prior knowledge that Plaintiff feared for his life.  Defendant Ladner knew about the August altercation, and he confirmed that Evans and Dixon were separated.  He also talked to Dixon about his fears after the September 18th attack; he had Plaintiff moved to "PC" on October 1, 2008, after that discussion.  Ladner denied having any other notice of Dixon's fears.  If he received anything in writing, it was a few days prior to Dixon's October 1st move to "PC."

Defendant Smith testified that he received no written requests from Dixon regarding his fear of Evans.  Had he received such a report, he would have investigated.

According to Defendant Smith, had Dixon written anything telling him his life was in danger, the complaint would have been written in his offender log or drill down report. Such an entry was not there.

Defendant Arnold testified that she had no gang connections, and she did not know Jamie Evans personally. She did not offer Evans any assistance on September 18, 2008, and she was not even aware that an altercation or assault had occurred. Plaintiff Dixon never told her he was in danger, and she knew of no evidence which would have allowed her to know Dixon was in danger.

In support of their testimony, Defendants offered into evidence the drill down detail reports regarding Dixon and Evans. These are computer-generated reports, kept in the normal course of business at CMCF. The report regarding Dixon confirms that he was moved to another zone on August 22, 2008 [after the first altercation with Evans], and then moved to "PC" on October 1, 2008. Dixon's offender log references his request to be taken off "PC" on November 5, 2008. The report on Evans indicates Evans was transferred to Parchman on April 23, 2009.

Ladner testified that Plaintiff never requested to be moved to "PC," either before or after the August and September assaults. When Dixon requested to be taken off "PC," Evans was still incarcerated at CMCF. Ladner testified that he has seen no written requests from Dixon requesting to be moved, or stating that he feared for his life. Such reports would be in his detail report or offender log had Dixon made such requests, according to both Ladner and Smith. Defendant Smith testified that if Dixon had complained to him about fearing for his life, Smith would have documented the complaint; there is no such entry.

The Court must apply the law to the evidence presented. First, Dixon must prove he was incarcerated under conditions posing a substantial risk of serious harm. He has provided evidence that Evans presented a serious threat to his safety, that being the initial

August 22nd altercation.  He must then show that these Defendants were aware of these threats, or facts which would cause them to infer Dixon was in danger, and they were deliberately indifferent to Dixon's need for protection from Evans.  Dixon fails in his proof of this element, because he was transferred to another zone immediately after the August 22nd altercation.  The Court finds that the action of moving Dixon was reasonable under the circumstances and prevents a finding of deliberate indifference.  These Defendants must have been aware of facts which would lead them to infer that a substantial risk of serious harm to Dixon existed, and they must have actually drawn the inference.  *Newton*, 133 F.3d at 308.

Whether these Defendants had the requisite knowledge of a substantial risk is a question of fact.  *Neals*, 59 F.3d at 533.  In this case, Dixon may have told Defendant Ladner in the barbershop that he was afraid of Evans.[2]  He may have asked Defendant Smith to investigate Evans and the threat to him by the gang.  Yet, Dixon did not request to be placed on PC, and his prison offender log does not show that he reported either in writing or orally that he was in danger or had been threatened.  Even so, moving Dixon to another zone was reasonable under such circumstances.  These Defendants could not reasonably anticipate that separating Evans from Dixon would be insufficient to protect him.

After Dixon was again attacked, the prison placed him in PC within two weeks.  These actions were a reasonable response to the attack by Evans.  Dixon is not pleased

---

[2]As the Court noted in *Newton*, 133 F.3d at 307, Parchman is "a dangerous place," with 80% of its 6,000 inmates being "violent offenders."  The Court still found that an officer was not aware that "a substantial risk" of harm existed simply because a prisoner reported a threat by another inmate and asked to be moved; threats are part of the penitentiary's daily fare.  A similar analysis could be applied to CMCF.  Accordingly, even if Dixon reported his fears to Defendants Ladner and Dixon, this is not enough in and of itself to establish a constitutional violation.  "Not every injury by one prisoner at the hands of another translates into constitutional liability for prison officials responsible for the victim's safety."  *Farmer*, 511 U.S. at 834.

with Defendants' response, as he preferred that Evans be moved away from CMCF. Yet Defendant Ladner testified that he had little control over MDOC inmates' movements from one facility to another. His option for protecting inmates is generally limited to placing the inmate in "PC." This places the inmate in a private cell rather than an open bay, so they have no contact with other inmates.

As to Defendant Arnold, Dixon has failed to present any evidence other than his unsubstantiated and conclusory allegations regarding any gang-related activity on her part. He charges that he believes she was friends with Evans, and may have hidden him prior to the September attack. He presented no corroborating evidence of any kind. Defendant Arnold flatly denied such allegations, and her testimony was credible and convincing. Dixon has failed to prove by a preponderance of the evidence any of his claims against Defendant Arnold.

Under all of the circumstances of this case, Dixon has failed to prove by a preponderance of the evidence that these Defendants were aware of a substantial risk of serious harm to Dixon prior to the August 22nd altercation. Defendants Ladner and Smith reacted reasonably after that incident by moving Dixon to a different zone. When this failed, and Dixon was again attacked, they acted reasonably by moving Dixon to "PC." Plaintiff has failed to prove that these Defendants violated his rights as secured by the United States Constitution.

For these reasons, the Court finds that Dixon's Complaint should be dismissed with prejudice. A Final Judgment shall be entered in favor of Defendants Brian Ladner, Sean Smith, and Alice Arnold on this date.

IT IS, THEREFORE, ORDERED that the Complaint filed by Plaintiff Kenneth Dixon is dismissed with prejudice.

SO ORDERED, this the 26th of July, 2011.

/s/ Linda R. Anderson
UNITED STATES MAGISTRATE JUDGE